# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**FREIGHT RUNNERS EXPRESS, INC.,**
   **Plaintiff,**

 v.             Case No. 08-C-0787

**UNITED STATES OF AMERICA,**
   **Defendant.**

---

## DECISION AND ORDER

Plaintiff Freight Runners Express, Inc., filed the present action pursuant to the Federal Tort Claims Act, alleging that air and ground traffic controllers at General Mitchell International Airport negligently caused a collision involving two of plaintiff's small cargo planes. The case is scheduled for a bench trial, and before me now is plaintiff's motion in limine seeking to exclude certain testimony by an expert witness for the United States, Dr. Warren DeHaan, pursuant to Federal Rule of Evidence 702. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Plaintiff does not object to DeHaan's qualifications but argues that his testimony is not based on sufficient facts or data and is not the product of reliable principles and methods.

The background to plaintiff's motion is as follows. The collision between plaintiff's cargo planes occurred shortly after they landed, while both planes were taxiing off their

respective runways towards a cargo ramp. Air and ground traffic controllers routed both planes through the same intersection. As they approached the intersection, the pilots failed to see each other and collided, causing severe property damage but no substantial personal injuries. Plaintiff alleges that the air and ground traffic controllers were negligent in failing to direct one of the pilots to "hold short" while the other passed through the intersection. The United States argues that the pilots failed to keep a proper lookout as they approached the intersection and that therefore it was the pilots' negligence that caused the collision.

The United States plans to call Dr. DeHaan, an optometrist and pilot, as an expert witness to testify on the subject of human vision and whether it was possible for the two pilots to have seen each other before the collision. DeHaan opines that "each of the pilots had ample opportunity to visually acquire the other airplane in time to prevent this accident." (Def.'s Br. at 13.) By this, DeHaan means that the pilots could have seen each other at some point during a twenty-second interval in which they traveled in clear view of each other on nearby runways. (Def.'s Br. at 14-15.) The United States plans to use this opinion in conjunction with the pilots' testimony, in which they stated that they did not see each other until after the collision, to show that the pilots were not paying attention. The United States's argument is that any pilot exercising proper vigilance would have seen the other plane heading towards the intersection at some point during the twenty seconds prior to the collision, and would therefore have exercised caution before entering the intersection.

Initially, I note that it is not clear to me that Dr. DeHaan's testimony is relevant to any disputed issue of fact. Plaintiff does not seem to dispute that each pilot could have seen

2

the other had they looked hard enough. Plaintiff's argument is that even if the pilots saw each other they would not have stopped because the traffic controllers gave each pilot the "green light" to pass through the intersection. In other words, plaintiff argues that each pilot was entitled to assume based on his instructions from traffic controllers that the other pilot was going to stop before passing through the intersection. The United States disputes that this was a reasonable assumption and argues that pilots have the primary responsibility to avoid collisions. In either case, however, DeHaan's testimony does not appear to be relevant to these issues, assuming that plaintiff will concede that the pilots could have seen each other at some point during the twenty seconds prior to the collision had they been paying attention. However, the United States indicates that plaintiff may offer testimony suggesting that the pilots could not have seen each other even if they were looking. If plaintiff does offer such testimony, DeHaan's testimony will be relevant rebuttal evidence.

Assuming that DeHaan's testimony will be relevant at trial, I turn to plaintiff's claim that his conclusions are not based on sufficient facts and reliable methods. Plaintiff first argues that DeHaan's conclusions are based on inaccurate measurements. This argument arises from an apparent discrepancy between two different presentations of the "ASDE-X" ground radar data recorded at the time of the collision.[1] In one presentation of the data, it appears that the planes collided at 8:00 p.m. sharp. In a different presentation (the one used by DeHaan), it appears that the planes collided three seconds later. When plaintiff's counsel deposed a witness with knowledge of the ground radar data (Terrence Johnson)

---

[1] By "presentations," I mean the pictorial representations of the locations of each plane on the ground at Mitchell Field at a given point in time. The "data" underlying these presentations are the coordinates of each plane as detected by the ground radar system.

3

Case 2:08-cv-00787-LA   Filed 03/30/10   Page 3 of 6   Document 31

and asked him about this discrepancy, the witness stated that if there were any discrepancy, the presentation showing the collision at 8:00 p.m. sharp would probably be the more accurate presentation. Based on this testimony, plaintiff argues that DeHaan's reliance on the presentation showing the collision at three seconds past 8:00 p.m. undermines all of his opinions.

The United States contends that there is no actual discrepancy between the presentations because the exact same data was used to generate both presentations. The United States argues that the difference between the two presentations has to do with the size of the icons used to represent the locations of the planes on the runway. The presentation that appears to show the collision at 8:00 p.m. uses larger icons to represent the planes, with the result that the icons appear to collide earlier than in the presentation utilizing smaller icons, which shows the collision occurring three seconds later. The United States further argues that DeHaan's opinions do not turn on the exact time of the collision but on the relative positions of the two planes during the twenty seconds prior to the collision. Thus, DeHaan's opinions would be the same whether the accident occurred at 8:00 p.m. sharp or three seconds past 8:00 p.m.

I find that the parties' dispute over the alleged discrepancy in the ground radar data is not a basis for excluding DeHaan's testimony. Based on the present record, it appears that the alleged discrepancy is due to the size of the icons used to represent the planes, not sheer inaccuracy. Further, DeHaan's opinions are based on the approximate positions of the two planes relative to each other, and such opinions do not seem to turn on the exact time of the accident or the precise positions of the two planes during the three seconds prior to the collision. To the extent plaintiff is able to demonstrate at trial that the

4

difference between the two data presentations has any meaningful impact on DeHaan's conclusions, I will take that into account when deciding how much weight to give his testimony.

Plaintiff's remaining challenge to DeHaan's testimony has to do with a statement he made at his deposition, in which he opined that the two pilots could have "glimpsed" each other in the seconds before the collision. (DeHaan Dep. at 174.) Plaintiff argues that no data supports this conclusion. In its brief, the United States represents that DeHaan's conclusion is not that the pilots could have glimpsed each other in the seconds before the collision. Rather, it is DeHaan's opinion that the pilots could have seen each other at some point during a twenty-second interval in which they were both taxiing towards the same intersection. Again, this goes to the United States's point that the pilots were not exercising vigilance: had they been paying attention, the pilots would have known that they were headed for the same intersection. And again, plaintiff's response is that even if the pilots saw each other they would have both continued through the intersection because each would have assumed that traffic controllers had instructed the other to stop. In any event, the important point is that the United States does not intend to call DeHaan to offer the opinion that the pilots could have glimpsed each other in the final seconds before the collision. Thus, plaintiff's objection to this opinion appears to be moot. If at trial DeHaan offers such an opinion or any other opinion that plaintiff believes is inadmissible, I can evaluate the opinion's admissibility at that time. Because this case will be tried without a jury, plaintiff will not have to worry about a jury hearing an opinion that is later deemed inadmissible.

For the reasons stated, **IT IS ORDERED** that plaintiff's motion to strike DeHaan's testimony is **DENIED**.

Dated at Milwaukee, Wisconsin, this 30 day of March 2010.

/s_____
LYNN ADELMAN
District Judge